# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 14 C 2388 |
| | ) (Crim. Case No. 08 CR 682) |
| **SCOTT C. CARLBERG**, #22644-424, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

On April 3, 2013 this Court sentenced Scott Carlberg ("Carlberg") to a 348-month sentence based on his plea of guilty to having robbed 11 banks, having possessed a firearm after a prior felony conviction and having used a firearm in two of those bank robberies. One day short of a year later Carlberg filed a timely 28 U.S.C. § 2255 ("Section 2255") motion seeking to vacate or set aside his sentence on the ground that he was assertedly denied the effective assistance of counsel in several respects.

This Court complied with Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules") by ordering the United States Attorney's Office to respond to the motion (a response -- cited here as "G. Resp. I" -- that necessarily included input from both attorney Roger Dusberger ("Dusberger") and the other lawyer charged by Carlberg with constitutionally deficient representation, Richard Kling ("Kling")).[1] Then, pursuant to Section 2255 Rule 5(e), this Court granted Carlberg leave to file a reply to the

---

[1] In addition to the shorthand designations "C." and "G." that this opinion employs in citing the submissions by Carlberg and the Government respectively, it uses the shorthand designations "D." for Dusberger and "K." for Kling in citing their respective filings.

government's response, which he did on October 24, 2014 in an articulate 60-page magnum opus, that he labeled "Traverse" (citations to that filing will take the form "C. Traverse").

Because Carlberg's memorandum was so expansive, on November 6, 2014 this Court ordered the government to address it with a fuller response and asked the United States Attorney's Office to submit its own view as to an appropriate timetable for that filing. Regrettably, however, the government failed to do so and this case lay dormant for some 17 months until a semiannual audit of this Court's calendar revealed that it had fallen through the proverbial cracks. That audit prompted this Court to inquire with the government as to when its response would be forthcoming, and that response (cited here as "G. Resp. II") was received on June 9, 2016. At long last this matter is now ripe for decision.

Because the government's seven-page G. Resp. I and 13-page G. Resp. II are so comprehensive in refuting each of Carlberg's contentions, this opinion will not seek to repeat government counsel's detailed discussion. Instead this Court will set out the ground rules for ineffective assistance claims generally and will then provide brief summaries of the deficiencies in each of Carlberg's three asserted grounds for relief under Section 2255.

## **Standard for Ineffective Assistance of Counsel**

For over three decades <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984) has set the standard for evaluating claims of ineffective assistance of counsel:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both

showings, it cannot be said that the conviction or death sentence resulted from a
breakdown to the adversary process that renders the result unreliable.

As to the standard for attorney performance, Strickland, id. at 687-88 (internal citations omitted) went on to explain:

> When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.

Ben-Yisrayl v. Buss, 540 F.3d 542, 547-48 (7th Cir. 2008) (internal quotation marks, brackets and citations omitted) has elaborated further on Strickland's two-part test:

> For the first prong [of Strickland], review of trial counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. To show prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

As will be seen, none of Carlberg's three asserted grounds for relief reaches that high bar.

## Carlberg's First Ground

Carlberg's Ground One faults his last attorney,[2] Dusberger, for failing to file a motion to suppress evidence obtained through the government's installation of a GPS tracking device. According to Carlberg that tracking device was obtained pursuant to a warrant that was facially overbroad and thus violated the Warrant Clause of the United States Constitution. But that contention is readily rejected, for even if Dusberger had acted unreasonably in not filing such a

---

[2] During the course of the case Carlberg had successive fallings out with three different members of this District Court's federal defender panel (including Kling) before he finally completed his case with fourth attorney Dusberger.

motion (which, as will be seen, he did not), Carlberg was not even arguably prejudiced by that claimed omission.

First, Carlberg cannot show that a motion to suppress would have been successful. He can point to no authority forbidding the use of GPS tracking devices by law enforcement personnel generally, nor can he point to a valid basis for rejecting as overbroad the warrant at issue here. Indeed, the government's warrant application (C. Traverse Exs. A-C) included attachments detailing both the rationale for seeking the warrant and the evidence that the tracking device was intended to uncover. In sum, there is no predicate for concluding that the warrant would have failed the particularity requirement of the Warrant Clause.

Second, even if the warrant <u>had</u> been overbroad, Carlberg cannot overcome the exception to the exclusionary rule announced in <u>United States v. Leon</u>, 468 U.S. 897, 922 (1984):

> We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.

Here Carlberg has made no showing that the agents acting in reliance on the warrant did so unreasonably.

Finally, even if the motion would somehow have been granted despite the just-detailed obstacles, that would not have altered the ultimate outcome. That is because Carlberg's detailed confession and the evidence seized from his vehicle were more than enough to seal his fate.

Hence Carlberg's first ground for Section 2255 relief must be called "out" on three strikes, even though one would have sufficed. It is rejected.[3]

---

[3] Carlberg has relatedly asserted that inaccuracies purportedly contained in the warrant affidavit justified an evidentiary hearing pursuant to the holding of <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978). But that very holding torpedoes Carlberg's contention:

(continued)

## Carlberg's Second Ground

Ground Two charges attorney Kling with ineffective representation based on his failure to set forth sufficient justification in his motion that sought Criminal Justice Act (18 U.S.C. § 3006A) funds in order to retain an investigator. According to Carlberg, an investigator was necessary to locate witnesses who could contradict the government on whether FBI agents searched his truck at the time of his arrest.

But Kling (in K. Reply 2) has set out his belief that such an investigation would likely have been fruitless and a distraction from dealing with the overwhelming evidence inculpating Carlberg. Although Carlberg may (and does) dispute that viewpoint, it cannot fairly be regarded as objectively unreasonable. Moreover, even if Kling might arguably be characterized as having acted unreasonably in filing a fairly barebones motion (a dubious hypothetical at best), the second Strickland requirement still renders that contention groundless because (1) Carlberg has made no showing that a more detailed motion would have been granted and (2) even if it had been granted it would not have affected the outcome, given the overwhelming weight of the

---

(footnote continued)

> We reverse, and we hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

Here, even if Carlberg had shown that the affidavit contained substantial inaccuracies (which he has not), there has been no showing whatever that such inaccuracies were knowing and intentional or reflected a reckless disregard for the truth.

other evidence inculpating Carlberg. Thus this second potential ground for relief is likewise rejected.

## **Carlberg's Third Ground**

Carlberg's third and final ground once again charges Kling with ineffective assistance, this time based on his asserted mishandling of a motion to suppress the statements Carlberg made to FBI agents. That purported mishandling consisted of Kling's assertedly (1) having mischaracterized in that motion why Carlberg had supposedly been impaired when he made those statements, (2) having failed to conduct a redirect examination of Carlberg during the hearing on that motion and (3) having failed to call, as a witness in that hearing, Yolanda King ("King") -- someone who assertedly would have corroborated Carlberg's hearing testimony. But none of those acts or omissions can be viewed as objectively unreasonable or as prejudicial to Carlberg.

As to that first issue, Carlberg asserts that the actual reason he was impaired -- his history of substance abuse -- was not reflected in his motion to suppress, which argued he was intoxicated when making the statements. That omission -- for which he blames Kling -- assertedly damaged Carlberg's credibility when his testimony was shown to be inconsistent with the narrative advanced in the motion.

But even if that version of events were to be credited -- and even setting aside the fact that Carlberg signed an affidavit stating that the motion was truthful (!) -- there is no reason to believe that an assertedly more accurate motion (and thus more assertedly credible testimony by Carlberg) would have made any difference in the end. As explained in United States v. Sablotny, 21 F.3d 747, 750 (7th Cir. 1994) (internal quotation marks omitted):

A confession is voluntary if, in light of the totality of the circumstances, the confession was not secured through psychological or physical intimidation but rather was the product of a rational intellect and free will.

Here there is simply no predicate for concluding that Carlberg's history of substance abuse compromised his intellect or rendered him incapable of exercising free will, particularly given the extensive evidence adduced by the government showing that he behaved rationally when he made the statements (evidence that included a handwritten two-page statement confessing to the robbery of eleven banks). Nor is there any showing that Carlberg was subjected to psychological or physical intimidation. In sum, even if the motion as written had matched Carlberg's later testimony, any notion that the motion would have succeeded in persuading this Court to suppress the statements is insupportable.

That same logic dooms Carlberg's related assertion that Kling should have conducted a redirect examination of Carlberg during the hearing. Had he then been interrogated by Kling and given a chance to explain his history of substance abuse, once again it cannot be said that the outcome of the hearing would have been different, given the substantial evidence that Carlberg was acting rationally when making the statements.

Finally, as to Kling's decision not to call King as a witness, Kling has represented (K. Reply 2) that he believed calling her to the stand would have been a strategic mistake, and the government (G. Resp. II at 12) has provided sensible reasons as to why he was right. Moreover, even if King could have rescued Carlberg's credibility about his substance abuse, she hardly could have saved him from his clear and detailed confession or the physical evidence implicating him in the robberies. Thus Kling has also struck out on his third and final ground for relief.

**Conclusion**

Because of the government's unexplained months-long inattention to this matter, this opinion has been too long in coming. But that said, it is clear that none of Carlberg's three grounds entitles him to Section 2255 relief. Accordingly his motion under that section (Dkt. No. 1) is denied, and this matter is terminated.

	_____
	Milton I. Shadur
	Senior United States District Judge

Date: June 23, 2016